# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| REID FRIEDMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>  Plaintiff,<br><br>  v.<br><br>PENSON WORLDWIDE, INC., PHILIP A. PENDERGRAFT, and KEVIN W. MCALEER<br><br>  Defendants. | Civil Action No. 3:11-cv-02098-O |

**MEMORANDUM OF LAW IN SUPPORT OF THE REVALONG CAPITAL LIMITED FUND'S MOTION FOR (1) APPOINTMENT AS LEAD PLAINTIFF AND (2) APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

FACTUAL BACKGROUND ................................................................................................... 2

ARGUMENT ............................................................................................................................ 5

    I.    THE REVALONG FUND SHOULD BE
          APPOINTED LEAD PLAINTIFF FOR THE CLASS .............................................. 4

          A.    The PSLRA's Provisions Concerning
                 The Appointment Of A Lead Plaintiff ................................................................ 4

          B.    Under The PSLRA, The Revalong Fund Should Be Appointed Lead
                 Plaintiff ................................................................................................................ 6

                 1.    The Revalong Fund Filed A Timely Motion ............................................ 6

                 2.    The Revalong Fund Has The Largest
                        Financial Interest In The Relief Sought by the Class ............................... 7

                 3.    The Revalong Fund Meets Rule 23's
                        Typicality And Adequacy Requirements ................................................... 8

                 4.    The Revalong Fund Is The Prototypical Lead Plaintiff Envisioned
                        By The PSLRA ....................................................................................... 10

    II.   THE COURT SHOULD APPROVE THE REVALONG FUND'S
          SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL ............................. 11

CONCLUSION ....................................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Bell v. Ascendant Solutions, Inc.*,
   No. 3:01-CV-0166-P, 2002 U.S. Dist. LEXIS 6850 (N.D. Tex. Apr. 17, 2002).......................9

*In re BP, PLC Sec. Litig.*,
   758 F. Supp. 2d 428 (S.D. Tex. Dec. 28, 2010)..............................................................5, 7, 10

*Brody v. Zix Corp.*,
   No. 3:04-CV-1931-K, 2005 U.S. Dist. LEXIS 13871 (N.D. Tex. July 11, 2005).....................8

*Buettgen v. Harless*,
   263 F.R.D. 378 (N.D. Tex. 2009) ...............................................................................5, 8, 12

*In re Firstplus Fin. Group, Inc. Sec. Litig.*,
   No. 3:98-CV-2551-M, 2002 U.S. Dist. LEXIS 20446 (N.D. Tex. Oct. 23, 2002)....................9

*Gluck v. CellStar Corp.*,
   976 F. Supp. 542 (N.D. Tex. 1997) .......................................................................................11

*James v. City of Dallas*,
   254 F.3d 551 (5th Cir. 2001) ..................................................................................................8

*Lehocky v. Tidel Techs., Inc.*,
   220 F.R.D. 491 (S.D. Tex. 2004).............................................................................................9

*Mullen v. Treasure Chest Casino, LLC*,
   186 F.3d 620 (5th Cir. 1999) ..................................................................................................8

*Netsky v. Capstead Mortgage Corp.*,
   No. 3:98-CV-1716-L, 2000 U.S. Dist. LEXIS 9941 (N.D. Tex. July 12, 2000) ......................7

*In re Olsten Corp. Sec. Litig.*,
   181 F.R.D. 218 (E.D.N.Y. 1998) ...........................................................................................10

*Plumbers & Pipefitters Local 51 Pension Fund v. Darden Rests., Inc.*,
   No. 6:08-cv-388-Orl-19DAB, 2008 U.S. Dist. LEXIS 111155 (M.D. Fla. July 1,
   2008) .....................................................................................................................................11

*In re Reliant Sec. Litig.*,
   No. 02-1810, 2002 U.S. Dist. LEXIS 27777 (S.D. Tex. Aug. 27, 2002) ................................2

*Slott v. Capital Fin. Servs., Inc.*,
   No. 3:11-cv-2073-F, 2011 U.S. Dist. LEXIS 102907 (N.D. Tex. Sept. 12, 2011)...................8

*Stoffels v. SBC Commc'ns., Inc.*,
  238 F.R.D. 446 (W.D. Tex. 2006) ..................................................................................8, 9

*Strougo v. Brantley Capital Corp.*,
  243 F.R.D. 100 (S.D.N.Y. 2007) .........................................................................................11

*TDH Partners LLP v. Ryland Group, Inc.*,
  No. 3:04-CV-0073-B, 2006 U.S. Dist. LEXIS 36084 (N.D. Tex. June 2, 2006) ..................5, 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)............................................................................................................10

*In re Waste Mgmt., Inc. Sec. Litig.*,
  128 F. Supp. 2d 401 (S.D. Tex. 2000) ..................................................................................8


**STATUTES**

15 U.S.C. §§ 78u-4(a)(1) & (a)(3)(B)(I) ......................................................................................4

15 U.S.C. § 78u-4(a)(3)(A)(i) ......................................................................................................6

15 U.S.C. § 78u-4(a)(3)(B) ......................................................................................................1, 7

15 U.S.C. § 78u-4(a)(3)(B)(i) ......................................................................................................5

15 U.S.C. § 78u-4(a)(3)(B)(iii) ....................................................................................................1

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ................................................................................................5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) .........................................................................................7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ...............................................................................................5

15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa)........................................................................................11

15 U.S.C. § 78u-4(a)(3)(B)(v) ................................................................................................2, 11

PSLRA ................................................................................................................................*passim*

§ 21D(a)(2).................................................................................................................................6

§ 21D(a)(3)(B)(iii)(bb)..............................................................................................................10

Securities Exchange Act of 1934 (the "1934 Act") ....................................................................1

**OTHER AUTHORITIES**

H.R. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ..........................................10

Rule 23 ................................................................................................................................ *passim*

Rule 23(a) ..........................................................................................................................................8

Rule 23(a)(4) ....................................................................................................................................9

Revalong Capital Limited Fund (the "Revalong Fund"), on behalf of itself and the class defined herein (the "Class"), respectfully submits this memorandum of law pursuant to Section 21D(b)(3)(B) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), in support of the Revalong Fund's motion for the entry of an order:  (1) appointing the Revalong Fund as Lead Plaintiff for the Action and (2) approving the Revalong Fund's selection of the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel.

## PRELIMINARY STATEMENT

Presently pending in this District is a class action (the "Action"), brought on behalf of persons who purchased or otherwise acquired the securities of Penson Worldwide, Inc. ("Penson" or the "Company") between February 2, 2011 and August 4, 2011 (the "Class Period"), against the Company and certain of its officers and/or directors for violations of the Securities Exchange Act of 1934 (the "1934 Act").  Various movants now seek: (1) appointment as lead plaintiff and (2) approval of their selection for lead counsel.

With respect to the appointment of a lead plaintiff to oversee the Action, Congress established a presumption in the PSLRA that requires the Court to appoint as lead plaintiff the "person or group of persons" who demonstrate the "largest financial interest in the litigation" and who otherwise satisfies Rule 23's typicality and adequacy requirements for class representatives. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).  By favoring those with the largest financial interest in the litigation, Congress intended to establish a rule that would lead to the appointment of institutional investors who would be best suited to oversee the litigation and control counsel.

With total losses of $99,971.66, the Revalong Fund, to the best of counsel's knowledge, possesses the largest financial interest in the litigation of any institutional movant.  Accordingly, the Revalong Fund is the presumptive lead plaintiff.  The Revalong Fund also satisfies Rule 23's typicality and adequacy requirements.  The Revalong Fund's claims are typical of the Class's

claims because its members suffered losses in their Penson investments as a result of the defendants' false and misleading statements.  Further, the Revalong Fund has no conflict with the Class and will adequately protect the Class's interests given the Revalong Fund's significant stake in the litigation and its conduct to date in prosecuting the litigation, including its submission of the requisite certification and its selection of experienced class counsel. Moreover, the Revalong Fund is a sophisticated institutional investor, and is therefore the paradigmatic lead plaintiff envisioned by the PSLRA.  *See In re Reliant Sec. Litig.*, Consol. No. 02-1810, 2002 U.S. Dist. LEXIS 27777, at *9 (S.D. Tex. Aug. 27, 2002) ("Large institutional investors . . . tend to be sophisticated investors capable of controlling attorneys in securities fraud litigation, and the [PSLRA], by emphasizing financial stake, expresses a preference for appointing such investors.").

Lastly, if appointed Lead Plaintiff, the Revalong Fund is entitled to select, subject to the Court's approval, lead counsel to represent the Class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  The Revalong Fund has engaged the Faruqi Firm for this purpose.  The Faruqi Firm is an appropriate selection to serve as Lead Counsel because it is a highly experienced plaintiffs' firm with substantial securities class action experience.  Liaison counsel Roger F. Claxton is experienced in litigation in this Court, and has extensive experience in class action securities litigation.

For the reasons summarized above and those explained more fully below, the Revalong Fund's motion should be granted in its entirety.

**FACTUAL BACKGROUND**

Penson is headquartered in Dallas, Texas and describes itself as a "leading independent execution, clearing, settlement and technology firm servicing the global financial services industry."  The core of Penson's business is "clearing trades in securities and derivative contracts

2

for broker-dealers serving individual investors, as well as high-frequency trading firms that need access to exchanges." Penson also derives a substantial portion of its revenue and income from interest it receives on margin loans to customers. To hedge against the risk associated with margin lending, Penson requires that customers pledge collateral, such as securities, in return for such loans. Further, Penson represented that it adequately managed and monitored credit risk associated with Penson's margin lending.

During the Class Period, Penson concealed from investors that by at least the end of 2010, the Company had approximately $43 million in nonaccrual receivables that were collateralized by illiquid bonds issued by Retama Development Corporation ("RDC")[1] and were unlikely to be collected. Penson therefore failed to write down the $43 million as bad debt on its 2010 10-K and caused the Company to materially overstate its 2010 assets. Additionally, the overstatement caused the Company's reported income and EBITDA (earnings before interest, taxes, depreciation, amortization and stock-based compensation, and excluding certain nonoperating expenses) to be materially misleading. Finally, the Company's financial statements were also not prepared in accordance with generally accepted accounting principles ("GAAP").

On May 9, 2011, Penson filed its 10-Q for the quarter ending March 31, 2011 and for the first time disclosed that approximately $43 million of the receivables were collateralized by illiquid securities. In the ensuing days, Penson shares declined 28% on heavy trading volume.

In response to the sharp price decline, Penson issued a press release on May 12, 2011 acknowledging that the "the recent declines in stock price appear to be related to its recent Form

---

[1] RDC is the owner of Retama Park, a racetrack located in Selma, Texas. The bonds at issue no longer had an active market because they were collateralized by the value of Retama Park's troubled real estate holdings.

3

10-Q disclosure of a concentrated collateral position associated with [RDC] related to receivables." However, Penson concluded that it "expects to resolve this situation without a loss, but even if a loss were realized, . . . it would have no impact on the Company's solid regulatory capital or sound financial condition." Finally, Penson announced the resignation of Director Thomas R. Johnson due to his position as Chief Executive Officer with Call Now, Inc., which pledged some of the RDC bonds as collateral for margin loans. Penson's stock subsequently declined $0.81 per share on May 12, 2011, or approximately 21%, to close at $3.12 per share.

On August 4, 2011, after the close of trading, Penson disclosed that the Company was taking a non-cash write down of $43 million and that the "write down was recorded in conjunction with Penson's initiation of foreclosure proceedings on the majority of the collateral underlying [nonaccrual] receivables, including, but not solely related to, certain assets associated with the [RDC], and shares of Penson Worldwide stock." On August 5, 2011, Moody's and S&P downgraded Penson's stock and Penson shares declined $0.49 per share or approximately 19% to close at $2.12 per share. On August 8, 2011, the next trading day, Penson stock declined further to close at $1.92 per share.

The Action is the only chance Class members will have to receive compensation for being defrauded by defendants' statements and omissions, and the Revalong Fund seeks to ensure that investors receive the maximum possible recovery.

## ARGUMENT

I.  **THE REVALONG FUND SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CLASS**

   A.  The PSLRA's Provisions Concerning The Appointment Of A Lead Plaintiff

The PSLRA governs the appointment of a lead plaintiff for "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules

4

of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(1) & (a)(3)(B)(I). It provides that within 20 days of the filing of the action, plaintiffs are required to publish a notice in a widely circulated business-oriented publication or wire service, informing class members of their right to move the Court, within 60 days of the publication, for appointment as lead plaintiff. *TDH Partners LLP v. Ryland Group, Inc.*, No. 3:04-CV-0073-B, 2006 U.S. Dist. LEXIS 36084, at *6–8 (N.D. Tex. June 2, 2006) (citing 15 U.S.C. § 78u-4(a)(3)(A)(i)).

Under 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court is then to consider any motion made by class members and is to appoint as lead plaintiff the movant that the Court determines to be "most capable of adequately representing the interests of class members." Further, the PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice (published by a complainant);
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 433 (S.D. Tex. Dec. 28, 2010) (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)); *Buettgen v. Harless*, 263 F.R.D. 378, 380 (N.D. Tex. 2009) (same).

Once it is determined who among the movants seeking appointment as lead plaintiff is the presumptive lead plaintiff, the presumption can be rebutted upon proof by a class member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *Buettgen*, 263 F.R.D at 380.

  **B.**  **Under The PSLRA, The Revalong Fund Should Be Appointed Lead Plaintiff**

  As discussed below, the Revalong Fund should be appointed Lead Plaintiff because all of the PSLRA's procedural hurdles have been satisfied, the Revalong Fund holds the largest financial interest of any institutional movant, and Revalong thereby satisfies Rule 23's typicality and adequacy requirements.

    **1.**  **The Revalong Fund Filed A Timely Motion**

  Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the first plaintiff to file a complaint in the Action was required to publish notice of the complaint within twenty (20) days of its filing. Counsel for Reid Friedman published notice of the lead plaintiff deadline via *PR Newswire* on August 24, 2011.[2] *See* Appendix, 5-7.[3] Consequently, any member of the proposed Class was required to seek to be appointed lead plaintiff within 60 days after publication of the notice (*i.e.*, on or before October 24, 2011). *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Thus, the Revalong Fund's motion was timely filed. Additionally, pursuant to Section 21D(a)(2) of the Exchange Act, the Revalong Fund timely signed and submitted a certification with its motion, identifying all of their relevant Penson trades during the Class Period, and detailing the Revalong Fund's suitability to serve as Lead Plaintiff in this case. *See* Appendix, 9. The PSLRA's procedural requirements have therefore been met.

---

[2] Publication by *PR Newswire* is an adequate means for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service." *See TDH Partners LLP,* 2006 U.S. Dist. LEXIS 36084, at *7 (finding publication in *PR Newswire* to be sufficient to satisfy PSLRA's published notice requirement).

[3] All references to Exhibits are references to the exhibits annexed to the Appendix filed in support hereof.

### 2. The Revalong Fund Has The Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the person with the largest financial interest in the relief sought by the class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

Although the PSLRA is silent as to the methodology courts are to use in determining which movant has the largest financial interest in the relief sought, courts in this Circuit often look to four factors in the inquiry: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered during the class period." *In re BP*, 758 F. Supp. 2d at 433 (citation omitted); *Netsky v. Capstead Mortgage Corp.*, No. 3:98-CV-1716-L, 2000 U.S. Dist. LEXIS 9941, at *17 (N.D. Tex. July 12, 2000).

Overall, the Revalong Fund collectively purchased 48,050 shares of Penson common stock during the Class Period, and suffered losses of $99,971.66 when calculated using either a first in, first out ("FIFO") methodology or last in, first out ("LIFO") methodology.[4] *See* Appendix, 12, 14. The Revalong Fund is presently unaware of any other institutional movant with a larger financial interest in the outcome of this litigation. Accordingly, the Revalong Fund is the presumptive Lead Plaintiff.

### 3. The Revalong Fund Meets Rule 23's Typicality and Adequacy Requirements

In addition to possessing the largest financial interest in the outcome of the litigation, the PSLRA also requires that the lead plaintiff make a preliminary showing that it satisfies Rule 23's requirements to be certified as a class representative. 15 U.S.C. § 78u-4(a)(3)(B). When

---

[4] These calculations are solely for purposes of this motion and are not meant to represent the amount of, or method of calculation of, damages that the Revalong Fund may present at trial.

7

assessing potential lead plaintiffs, only Rule 23(a)'s typicality and adequacy requirements are relevant. *Buettgen*, 263 F.R.D at 381 ("In the selection of lead plaintiff, the only relevant factors of Rule 23 are typicality and adequacy."); *see also In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 411 (S.D. Tex. 2000).

"[T]he test for typicality . . . focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Mullen v. Treasure Chest Casino, LLC.*, 186 F.3d 620, 625 (5th Cir. 1999) (citation and quotation omitted); *Slott v. Capital Fin. Servs., Inc.*, No. 3:11-cv-2073-F, 2011 U.S. Dist. LEXIS 102907, at *18-20 (N.D. Tex. Sept. 12, 2011). However, the claims of the class representative need not be identical to those of all members of the class. *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001) ("Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.") (quotation and citation omitted); *Stoffels v. SBC Commc'ns., Inc.*, 238 F.R.D. 446, 453 (W.D. Tex. 2006).

The Revalong Fund's claims are clearly typical of the Class's claims. The Revalong Fund satisfies the typicality requirement because, just like all the other Class members, it: (1) purchased or otherwise acquired Penson securities during the Class Period; (2) at prices allegedly inflated by defendants' materially false and misleading statements and/or omissions; and (3) suffered damages when the truth about the Company was subsequently disclosed. Because the factual and legal bases of the Revalong Fund's claims are similar, if not identical, to those of the Class's claims, the Revalong Fund necessarily satisfies the typicality requirement. *See Brody v. Zix Corp.*, No. 3:04-CV-1931-K, 2005 U.S. Dist. LEXIS 13871, at *8–9 (N.D. Tex. July 11,

8

2005) (finding typicality satisfied where lead plaintiff "purchased shares of [defendant's] stock during the class period, as did the other class members" and the stock "subsequently lost significant value as a result of Defendant's actions and false statements"); *Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 500 (S.D. Tex. 2004) (finding typicality satisfied where lead plaintiff "purchased [defendant's] common stock during the class period at artificially inflated prices and [was] injured because of Defendant's omissions and misrepresentations").

Rule 23(a)(4) requires that a representative party will also "fairly and adequately protect the interests of the Class." "[W]hat must be shown to establish adequacy is two-fold; that plaintiff's counsel has the zeal and competence to represent the class, and that the proposed class representative is willing and able to take an active role in controlling the litigation and protecting the absent class members." *In re Firstplus Fin. Group, Inc. Sec. Litig.*, No. 3:98-CV-2551-M, 2002 U.S. Dist. LEXIS 20446, at *18–19 (N.D. Tex. Oct. 23, 2002) (citing *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001)); *Stoffels*, 238 F.R.D. at 454 ("The representative plaintiffs must fairly and adequately represent the interest of the class by meeting two requirements: (1) the named representatives' interest must not be antagonistic to those of other class members; and (2) the representatives' attorneys must be able to prosecute the action vigorously.").

The Revalong Fund unquestionably has a strong incentive to vigorously prosecute claims on behalf of the Class. As set forth above, the Revalong Fund lost approximately $99,971.66 as a result of the fraud alleged here – a large sum that is more than sufficient to ensure zealous and dedicated advocacy on behalf of the Class.

As evidenced by the representations in the Revalong Fund's certification, its interests are perfectly aligned with, and by no means antagonistic to, the interests of the Class. *See, e.g., Bell*

*v. Ascendant Solutions, Inc.*, No. 3:01-CV-0166-P, 2002 U.S. Dist. LEXIS 6850, at *17–19 (N.D. Tex. Apr. 17, 2002) (finding adequacy satisfied where movant's certification indicated that "[e]ach of the Proposed Ascendant Lead Plaintiffs ha[d] a substantial sum at stake and they ha[d] no apparent potential conflicts between themselves and the class members"). Moreover, the Revalong Fund has selected and retained highly competent counsel to litigate the claims on behalf of himself and the Class. As explained below in Section II, the Faruqi Firm is well regarded for its experience, knowledge, and ability to conduct complex securities class actions on behalf of plaintiffs. *See* Appendix, 16-42. In addition, Roger F. Claxton has extensive experience in class action securities cases. Consequently, the Revalong Fund is more than adequate to represent the Class and has every incentive to maximize the Class's recovery.

    **4.**  **The Revalong Fund Is The Prototypical Lead Plaintiff Envisioned By The PSLRA**

In addition to satisfying the requirements of Rule 23, the Revalong Fund is precisely the type of large, sophisticated institutional investor envisioned by the framers of the PSLRA as the ideal Lead Plaintiff. As noted by Congress in the Statement of Managers, the PSLRA was enacted "to increase the likelihood that institutional investors will serve as lead plaintiff[]," in part, because "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." H.R. Rep. No. 104-369, at 34 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 733.[5] Consistent with Congress's intent, courts in this Circuit and around the country have

---

[5]  *See also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320-21 (2007) (noting that in the PSLRA "Congress prescribed new procedures for the appointment of lead plaintiffs . . . aimed to increase the likelihood that institutional investors . . . would serve as lead plaintiffs"); *accord In re BP, PLC Sec. Litig,* 758 F. Supp. 2d at 439 ("[T]he PLSRA expresses a strong preference for institutional investors to serve as lead plaintiffs); *In re Olsten Corp. Sec. Litig.*, 181 F.R.D. 218, 220-21 (E.D.N.Y. 1998) ("By establishing the presumptive criterion that the most adequate plaintiff is the one who 'has the largest financial interest in the relief sought

frequently recognized that institutional investors are ideally suited to fill the lead plaintiff role. *See, e.g., Gluck v. CellStar Corp.*, 976 F. Supp. 542, 548 (N.D. Tex. 1997) ("[T]hrough the PSLRA, Congress has unequivocally expressed its preference for securities fraud litigation to be directed by large institutional investors."); *Plumbers & Pipefitters Local 51 Pension Fund v. Darden Rests., Inc.*, No. 6:08-cv-388-Orl-19DAB, 2008 U.S. Dist. LEXIS 111155, at *4 (M.D. Fla. July 1, 2008) ("Particularly, Congress reasoned that such large investors would have an incentive to actively monitor the conduct of their attorneys and ensure that members of the class were well represented."); *Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 104 (S.D.N.Y. 2007) (movant's "role as an institutional investor with fiduciary responsibilities makes it particularly well suited" to serve as lead plaintiff).

The Revalong Fund, a private investment vehicle incorporated in the British Virgin Islands, is exactly the type of institutional investor that Congress intended to lead securities class actions when it passed the PSLRA. The Revalong Fund intends and is prepared to actively monitor the conduct of lead counsel to ensure that members of the Class are well represented. Indeed, it is hard to imagine a more ideal plaintiff than the Revalong Fund.

Because the Revalong Fund has satisfied all of the procedural requirements of the PSLRA, has demonstrated the largest institutional financial interest in the relief sought by the Class, and meets the typicality and adequacy requirements of Rule 23, the Revalong Fund respectfully submits that it should therefore be appointed as Lead Plaintiff in the Action.

## II.   THE COURT SHOULD APPROVE THE REVALONG FUNDS' SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the lead plaintiff is entitled to select and retain lead counsel for the Class, subject to the Court's approval. The court should not disturb lead

---

by the class,' PSLRA § 21D(a)(3)(B)(iii)(bb), Congress intended 'to increase the likelihood that institutional investors will serve as lead plaintiffs. . . .'").

plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa). The Revalong Fund has selected the Faruqi Firm to be Lead Counsel. As reflected in the firm's resume, the Faruqi Firm possesses extensive experience litigating complex class actions on behalf of plaintiffs, including securities class actions. *See* Appendix, 16-42. Accordingly, the Faruqi Firm is amply qualified to represent the Class, and the Revalong Fund requests that the Court approve its selection of the Faruqi Firm as Lead Counsel for the putative class. *See Buettgen,* 263 F.R.D. at 383 ("The Court has reviewed the resume of each firm and is satisfied that each firm could adequately represent the plaintiff class in this action.").

## CONCLUSION

For the foregoing reasons, the Revalong Fund respectfully requests that the Court: (1) appoint the Revalong Fund as Lead Plaintiff for the Action; (2) approve the Revalong Fund's selection of the Faruqi Firm as Lead Counsel for the Class; and (3) grant such other relief as the Court may deem just and proper.

Dated: October 24, 2011

    Respectfully submitted,

    **ROGER F. CLAXTON**

    By: */s/ Roger F. Claxton*
       Roger F. Claxton
    10000 N. Central Expressway
    Suite 724
    Dallas, Texas 75231-2351
    Tel: 214-969-9029
    Fax: 214-953-0583
    roger@claxtonlaw.com

**FARUQI & FARUQI, LLP**
Richard W. Gonnello
Juan E. Monteverde
369 Lexington Avenue, 10th Floor
New York, New York 10017
Tel: 212-983-9330
Fax: 212-983-9331
Email: rgonnello@faruqilaw.com
         jmonteverde@faruqilaw.com

*Attorneys for the Revalong Capital Limited Fund*

## **CERTIFICATE OF SERVICE**

        I hereby certify that on this 24th day of October, 2011, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this notice as service of this document by electronic means:

**Kaplan Fox & Kilsheimer LLP**
Jeffrey P. Campisi
850 Third Avenue, 14th Floor
New York, NY 10022
Phone: 212-687-1980
Fax: 212-687-7714
jcampisi@kaplanfox.com

**Kaplan Fox & Kilsheimer LLP**
Laurence D. King
350 Sansome Street, Suite 400
San Francisco, CA 94104
Phone: 415-772-4700
Fax: 415-772-4707
lking@kaplanfox.com

**Schneider Wallace Cottrell Brayton Konecky LLP**
Peter Schneider
3700 Buffalo Speedway #1100
Houston, TX 77098
Phone: 713 338-2560
Fax: 866-505-8036
pschneider@schneiderwallace.com

                                */s/ Roger F. Claxton*