**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| REID FRIEDMAN, on behalf of himself and all others similarly situated, | Civil Action No. 3:11-CV-02098-O |
| Plaintiff, | |
| v. | |
| PENSON WORLDWIDE, INC., PHILIP A. PENDERGRAFT, and KEVIN W. MCALEER | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO: (1) APPOINT REID FRIEDMAN AS LEAD PLAINTIFF; AND (2) APPROVE LEAD PLAINTIFF MOVANT'S CHOICE OF CO-LEAD COUNSEL**

**I.     INTRODUCTION**

Reid Friedman ("Mr. Friedman") respectfully submits this memorandum of law in support of his motion for: (i) appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78u-4(a)(3)(B); and (ii) approval of his selection of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox"), and Schneider Wallace Cottrell Brayton Konecky LLP ("Schneider Wallace") as co-lead counsel.

The above captioned action (the "Action") alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") on behalf of purchasers of Penson Worldwide, Inc. ("Penson" or "Company") common stock during the period February 10, 2011 and August 4, 2011 (the "Class Period"). With losses of approximately $160,760 under FIFO or LIFO from his Class Period transactions in Penson, Mr. Friedman believes he is entitled to appointment as lead plaintiff as the movant with the largest financial interest that otherwise meets the applicable requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").[1] *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); *Brody v. Zix Corp.*, 3:04-CV-1931, 2005 U.S. Dist. LEXIS 13871, at *4 (N.D. Tex. July 11, 2005). Further, Mr. Friedman respectfully requests the Court approve his selection of co-lead counsel. *See* § III.B, *infra*; *Kaplan v. Gelfond*, 240 F.R.D. 88, 96 (S.D.N.Y. 2007) ("the PSLRA directs the lead plaintiff to select and retain counsel to represent the class, subject to the Court's approval") (citing 15 U.S.C. § 78u-4(a)(3)(B)(v)).

**II.    SUMMARY OF THE ACTION**

The Company describes itself as a group of companies that "provides execution, clearing, custody, settlement and technology infrastructure products and services to financial services

---

[1]  *See* Appendix in Support of Lead Plaintiff Movant's Notice of Motion and Motion to: (1) Appoint Reid Friedman as Lead Plaintiff; and (2) Approve Lead Plaintiff Movant's Choice of Co-lead Counsel ("Appendix") Exhibit A, Friedman certification [App. at 1-4] and Exhibit B, Chart of losses [App. at 5-7].

firms and others servicing the global financial services industry." The Penson group of companies includes Penson Financial Services, Inc., Penson Financial Services Canada Inc., Penson Financial Services Ltd., Nexa Technologies, Inc., Penson Futures, Penson Asia Limited, and Penson Financial Services Australia Pty Ltd, among other companies. The Company is headquartered in Dallas, Texas.  ¶ 2.[2]  The Company's shares were publicly traded on the National Association of Securities Dealers Automated Quotations Market ("NASDAQ") under the symbol "PNSN" during the Class Period.

Prior to and during the Class Period, Penson derived a material part of its revenue and income from interest it received on margin loans to customers. In connection with margin lending to customer, Penson's customers pledge collateral, such as securities, in return for such loans.  Further, Penson represented that the Company maintained adequate policies and procedures to manage and monitor credit risk relating to Penson's margin lending. ¶ 3.

But, during the Class Period, unknown to investors, Penson concealed from investors that by at least the end of 2010, 1) that the Company had approximately $96-97 million in receivables ("Nonaccrual Receivables") of which approximately $43 million were collateralized by illiquid securities and therefore unlikely to be collected; 2) the Company's assets (Nonaccrual Receivables) were materially overstated and should have been written down at least by the end of 2010; 3) as a result, the Company's reported income and EBITDA (earnings before interest, taxes, depreciation, amortization and stock-based compensation, and excluding certain nonoperating expenses) were materially overstated; and 4) the Company's financial statements were not prepared in accordance with generally accepted accounting principles ("GAAP"). ¶ 4.

---

[2]   All references to ¶__ refer to the paragraphs in the complaint in this Action (Dkt. No. 1).

On May 9, 2011, Penson filed its quarterly report for the quarter ended March 31, 2011. ¶ 5. Penson disclosed, among other things, that with respect to the Nonaccrual Receivable (the Company reported approximately $97.4 million at the end of 2010 and approximately $96.9 million at March 31, 2011) approximately $43 million were collateralized by illiquid securities issued by a troubled horse track and real estate project in Texas:

> with respect to the Nonaccrual Receivables, at March 31, 2011, approximately $42,580[,000] were collateralized by bonds issued by the Retama Development Corporation ("RDC") and certain other interests in the horse racing track and real estate project ("Project") financed by the RDC's bonds. In each case these are owned by customers and pledged to the Company and/or its affiliates. Certain related parties to the Company own approximately $14,745 of RDC bonds that are pledged to the Company and/or its affiliates (see Note 17 to our December 31, 2010 consolidated financial statements as filed with the SEC on Form 10-K). There are a number of factors potentially affecting the value of the Project and the Nonaccrual Receivables related thereto including potential legislation in the Texas Legislature that could expand gambling privileges at the Project. Should such legislation be enacted there should be a positive impact on the value of the Project and therefore upon the collateral underlying related Nonaccrual Receivables. However, should such legislation not be enacted, depending on other factors potentially impacting the Project and related Nonaccrual Receivables, *it is possible that the value of the collateral associated with the Project and related Nonaccrual Receivables might be impaired, resulting in a write down of a portion of these receivables that could be material in amount* (emphasis added).

*Id.*

Between May 9 and May 11, 2011, Penson shares declined from a close on May 9, 2011 of $5.45 per share to close at $3.93 per share on May 11, 2011, a decline of approximately 28%, on heavy volume. ¶ 6.

Then on May 12, 2011, Penson issued a press release, that stated, in part, the following:

**Penson Worldwide, Inc. Says Market Activity Related to Non Accrual Receivables**

Dallas, TX, May 12, 2011 — Penson Worldwide, Inc. (NASDAQ: PNSN) today said it believes that the recent declines in its stock price appear to be related to its recent Form 10-Q disclosure of a concentrated collateral position associated with Retama Development Corporation related receivables. The Company currently

3

> expects to resolve this situation without a loss, but even if a loss were realized, Penson said it would have no impact on the Company's solid regulatory capital or sound financial condition. As reported in the Company's Form 10-Q, as filed with the Securities and Exchange Commission on May 9, 2011, Penson has approximately $42.6 million in non accruing receivables collateralized by securities related to the Retama Development Authority, which have declined in liquidity . . . .
>
> The Company also announced the resignation of Thomas R. Johnson from its Board of Directors. Based on Mr. Johnson's position as chief executive officer of Call Now, Inc, a holder of a portion of the Retama related collateral, both Mr. Johnson and the Company felt it appropriate for him to resign his position at this time. ¶ 7.

On May 12, 2011, Penson shares declined $0.81 per share further, or approximately 21%, to close at $3.12 per share, on heavy volume. ¶ 8.

On August 4, 2011, after the close of trading, Penson disclosed that "the Company recorded a non-cash write down of $43.0 million, equal to $26.7 million or ($0.94) per share net of tax, against $96.6 million of nonaccrual receivables. ¶ 11. The write down was recorded in conjunction with Penson's initiation of foreclosure proceedings on the majority of the collateral underlying these receivables, including, but not solely related to, certain assets associated with the Retama Development Corporation, and shares of Penson Worldwide stock." *Id.*

On August 5, 2011, Penson shares declined $0.49 per share, or approximately 19%, to close at $2.12 per share. Also on August 5, Moody's downgraded Penson. On August 8, 2011, the next trading day, Penson stock declined 9% further to close at $1.92 per share. ¶ 12.

## IV.   ARGUMENT

**A.   The Court Should Appoint Mr. Friedman As Lead Plaintiff.**

### 1.   The PSLRA's Lead Plaintiff Provisions

The PSLRA establishes the procedures for selecting a lead plaintiff in class action lawsuits alleging violations under the federal securities laws. *See* 15 U.S.C. § 78u-4(a).

4

First, the plaintiff who files the initial action must publish a notice within twenty days of filing, informing class members of their right to file a motion for appointment as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).

Second, within sixty days of the publication of notice, any person who is a member of the proposed class may apply to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

Third, the PSLRA provides that within ninety days after publication of notice, courts shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i); *Brown v. Bilek*, 401 F. App'x 889, 893 (5th Cir. 2010). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that –
>
> (aa)   has either filed the complaint or made a motion in response to a notice…;
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Kaplan*, 240 F.R.D. at 92.

Here, this Action was filed on August 23, 2011 and Notice was published on *PRNewswire* on August 24, 2011. *See* Appendix Exhibit C [App. at 8-10]. Thus, the time period in which class members may move to be appointed lead plaintiff in this case expires on October 24, 2011. *See* 15 U.S.C. § 78u-4(a)(3)(A). Pursuant to the PSLRA's provisions, and within the requisite time frame after publication of the required notice, Mr. Friedman timely moves this

5

Court to be appointed lead plaintiff on behalf of all members of the class. In addition, Mr. Friedman has selected and retained counsel experienced in the prosecution of securities class actions to represent the class. *See* Appendix Exhibit D [App. at 11-28] and Exhibit E [App. at 29-33]. Accordingly, Mr. Friedman satisfies the PSLRA's filing requirements for seeking appointment as lead plaintiff.

### 2. Mr. Friedman Is the "Most Adequate Plaintiff"

#### a. Mr. Friedman has the Largest Financial Interest in the Relief Sought by the Class

Mr. Friedman suffered losses of approximately $160,760 under FIFO or LIFO in connection with the Class Period transactions in Penson common stock. *See* Appendix Exhibit B, Chart of losses [App. at 5-7]. To the best of his knowledge, Mr. Friedman's loss represents the largest financial interest in the relief sought by the class. *See Kaplan*, 240 F.R.D. at 93-94.

#### b. Mr. Friedman Satisfies Rule 23

In addition to possessing the largest financial interest in the relief sought by the class, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *Brody*, 2005 U.S. Dist. LEXIS 13871, at *6. Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Of the four prerequisites to class certification, only two - typicality and adequacy - directly address the personal characteristics of the class representatives. *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 304 (S.D. Ohio 2005). Consequently, in deciding a motion to serve as lead plaintiff

or plaintiffs, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff or plaintiffs move for class certification. The court need determine only whether the plaintiff has made a *prima facie* showing of these elements. As detailed below, Mr. Friedman satisfies the typicality and adequacy requirements of Rule 23(a), thereby justifying his appointment as Lead Plaintiff in this action.

### 1. Mr. Friedman is Typical

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. The typicality requirement is satisfied when the named plaintiff's claims have the "same essential characteristics as those of the other class members; they arise from the same event or course of conduct, and are based on the same legal theory." *See Brody*, 2005 U.S. Dist LEXIS 13871, at *7.

Here, Mr. Friedman is typical because, just like all other class members asserting claims under the Exchange Act, each member of the group: (1) purchased Penson common stock during the Class Period; (2) at prices allegedly artificially inflated by defendants' materially false and misleading statements and/or omissions; and (3) suffered damages when corrective disclosures removed the inflation caused by the defendants' conduct causing the price of Penson's common stock to fall. Therefore, typicality exists here because Mr. Friedman's claims are based on the same legal theory and his "injuries result[ed] from the same, injurious course of conduct" as the other class members. *See Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001); *accord*, *In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal. 1988).

### 2. Mr. Friedman is Adequate

The adequacy requirement of Rule 23(a)(4) is met if the representative party makes a showing that it will "fairly and adequately protect the interests of the class." Specifically, the adequacy requirement is fulfilled when: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Kaplan*, 240 F.R.D. at 94; *see also Shi v. SINA Corp.*, 05 Civ. 2154, 2005 U.S. Dist. LEXIS 13176, at *9 (S.D.N.Y. July 1, 2005).

Here, Mr. Friedman is adequate to represent the class. Mr. Friedman's interests are aligned with the interests of the class as both suffered losses from the revelation of defendants' false and misleading statements and material omissions. Further, Mr. Friedman signed a certification stating that he is willing to serve as a representative of the class, including providing testimony at a deposition or trial (Exhibit A, Friedman certification [App. at 1-4]). *See Brody*, 2005 U.S. Dist. LEXIS 13871, at *8. Finally, as discussed below, Mr. Friedman's proposed co-lead counsel is highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, the Mr. Friedman has made a *prima facie* showing of typicality and adequacy.

### B. The Court Should Approve Mr. Friedman's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Kaplan*, 240 F.R.D. at 96. The Court should not disturb lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). Because Mr. Friedman has selected and retained counsel experienced in litigating class actions with the resources to

prosecute this action to the greatest recovery possible for the class, its choice of co-lead counsel should be approved.

Mr. Friedman has selected Schneider Wallace and Kaplan Fox as co-lead counsel for the class[3]. As set forth in Exhibit D [App. at 11-28] and Exhibit E [App. at 29-33] attached to the Appendix, both firms specialize in prosecuting complex class actions. Thus, the Court may be assured that in the event this motion is granted, the members of the class will receive the highest caliber of legal representation available from Kaplan Fox and Schneider Wallace, who have the expertise, experience and resources to zealously represent the class' interests.

## V.     CONCLUSION

For all the foregoing reasons, the Court should appoint Mr. Friedman as Lead Plaintiff in the above-captioned action, and approve his choice of Kaplan Fox and Schneider Wallace as Co-Lead Counsel.

DATED:     October 24, 2011          */s/ Peter Schneider*
                                      Peter Schneider
                                      Texas Bar No. 00791615
                                      Ryan R. C. Hicks
                                      Texas Bar No. 240008896
                                      SCHNEIDER WALLACE COTTRELL
                                      BRAYTON KONECKY LLP
                                      3700 Buffalo Speedway #1100
                                      Houston, Texas 77098
                                      Telephone: (713) 338-2560
                                      Facsimile: (866) 505-8036
                                      pschneider@schneiderwallace.com
                                      rhicks@schneiderwallace.com

                                      Laurence D. King
                                      KAPLAN FOX & KILSHEIMER LLP
                                      350 Sansome Street, Suite 400
                                      San Francisco, CA 94104
                                      Telephone: 415-772-4700

---

[3] Mr. Peter Schneider purchased $10,000 worth of Penson common stock during the class period.

9

Facsimile: 415-772-4707
lking@kaplanfox.com

Frederic S. Fox
Jeffrey P. Campisi
Pamela A. Mayer
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue
New York, NY 10022
Telephone: 212-687-1980
Facsimile: 212-687-7714
ffox@kaplanfox.com
jcampisi@kaplanfox.com
pmayer@kaplanfox.com

*Attorneys for Lead Plaintiff Movant Reid Friedman and Proposed Co-Lead Counsel*


Michael K. Hurst
Texas Bar No. 10316310
Dena DeNooyer Stroh
Texas bar No. 24012522
GRUBER HURST JOHANSEN HAIL SHANK LLP
1445 Ross Ave., Suite 2500
Dallas, TX 75202
Telephone: (214) 855-6802
Facsimile: (214) 855-6808
mhurst@ghjhlaw.com
dstroh@ghjhlaw.com

*Local Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 24, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Executed on October 24, 2011 in New York, New York.

*/s/ Peter Schneider*
Peter Schneider